# PHILLIPS *v.* THE STATE.

## (*Nashville.* March 8th, 1887.)

1. CRIMINAL LAW. *Once in jeopardy. Larceny from one room. Property of different persons.*

   Two indictments were brought against a defendant—one for burglariously entering a house and committing a larceny by taking clothing, the individual property of *one* person; and the other charging the simple larceny of clothing belonging to *another* person. It appeared that the property of both persons was in the same room, but in separate places; and taken on the same occasion.

   *Held:* There were two distinct larcenies; and that a trial and acquittal upon the first indictment affords no ground for a plea of once in jeopardy to the second indictment.

   Cases cited and approved: Morton *v.* State, 1 Lea, 498; 2 McMul., 382; 2 Mass., 409.

   Cited and distinguished: Bell's case, 4 Bax., 426; Fiddler's case, 7 Hum., 509; Wilcox case, 6 Lea, 571; State *v.* Chaffin, 2 Swan, 494; Fowler *v.* State, 3 Heis., 154; Kennon *v.* State, 10 Lea, 390; Womack *v.* State, 7 Cold., 508; Williams' case, 10 Hum., 101; Kelley *v.* State, 7 Bax., 323.

   Cited and disapproved: 23 Ohio St., 339; 45 Texas, 76.

2. LARCENY. *Ownership of property. Minor's clothing.*

   In an indictment for the larceny of the clothing of a female, 18 years of age, the ownership thereof is properly laid in the minor who owned and used the clothing, although she occupied a room with her mother, from which the clothing was stolen.

---

## FROM DAVIDSON.

---

Appeal in error from the Criminal Court of Davidson County. G. S. RIDLEY, J.

JAMES M. QUARLES for Phillips.

Attorney-General PICKLE for State.

CALDWELL, J.   Some one entered the dwelling-house of Mr. Moore by night, and took therefrom certain clothing belonging to Mrs. Sue K. Seawell, and certain other clothing belonging to her daughter, Miss Roberta Seawell.   The goods were taken on the same occasion and from the same room; but those belonging to the mother were taken from their place on one side of the room, and those belonging to the daughter from their place on the opposite side of the room, so that the two parcels could not have been taken into the possession of the same person at precisely the same moment of time.

Two indictments were returned against Grant Phillips—one of them charging him with burglariously entering the house and committing a larceny, by taking and carrying away "four dresses,   *   *   *   the property of Mrs. Sue K. Seawell;" the other charging him with the simple larceny of the clothing belonging to Miss Roberta Seawell.

He was arraigned and tried upon the former of these indictments, and acquitted.   Subsequently he was arraigned upon the latter indictment, and thereto "*plead not guilty, and once in jeopardy;*" and on the trial he introduced the record in the other case as evidence to sustain his plea of once in jeopardy.   This time he was convicted, and his

punishment assessed at three years' imprisonment in the penitentiary.

He has appealed in error.

Upon the plea of once in jeopardy, the trial Judge said to the jury:

"That if Mrs. Seawell and Miss Roberta Seawell were the owners of different lots of goods in the same room, and they were feloniously taken and carried away, although it was done on the same evening and during one continuing trespass, it would be two separate and distinct larcenies, and a former trial of the defendant for the larceny of Mrs. Seawell's goods would be no bar to a trial under the present indictment for the larceny of Miss Roberta Seawell's goods."

The learned counsel for the prisoner earnestly insist that this instruction is erroneous; that the acquittal upon the other indictment is a complete bar to the prosecution upon this one. In other words, that the reverse of the instruction given is the law, and that for this error a reversal should be had, and a new trial granted.

The Court was right and counsel is in error. The instruction quoted is correct as applicable to the facts of this case. The goods of the two ladies, though in the same room, were in different parts of that room, and so far apart that the thief could not have taken those belonging to the mother and those belonging to the daughter at the same moment of time and by the same act.

The taking into his possession of the goods on

one side of the room, and the removal of them from their place, without the consent of the owner, and with the intent of appropriating them to his own use, and depriving the owner thereof, constituted a complete larceny; and if the thief had been apprehended in the middle of the room as he passed from the one side to the other, with the goods already taken in his possession, the crime would have been perfect—the *trespass* as to the owner of those particular goods and the *asportation* would have been finished. The thief was then guilty of the larceny of the clothing he had then taken under his dominion; and what he did afterward was another crime—it was the taking and carrying away of the goods of another person in a subsequent moment of time and by different movements of his hands and body, with the necessary felonious intent. The taking of this other person's goods was without her consent, and was, therefore, a *trespass* against her; and all the goods were actually carried entirely off of the premises, and dropped some distance away.

The taking of the goods of the mother was a *trespass against her* and not against *her daughter;* and the taking of the goods of the daughter was a *trespass against her* and not against *her mother.* Then, were there not necessarily two trespasses, the one as to the mother and the other as to the daughter? Most certainly so; and the one was completed before the other was commenced.

Then, with reference to the *asportation:* the goods

first taken into the dominion and possession of the thief were by him carried across the room to the place of those belonging to the other person, or those last taken were carried to the place where the thief deposited those first taken for the time being. In either event the carrying away was complete in legal contemplation—there was an *asportation* of each lot of goods.

Neither of the ladies had the possession of the goods of the other, or any property rights therein. Hence, the *trespass* and *asportation* as to the one was no kind of legal *offense against the other*. *The wrong to one* of them was no *wrong to the other;* and if the wrong as to each was not a complete crime within itself, there was no crime at all, because two acts involving the distinct property and rights of different individuals cannot be coupled in order to constitute one offense against the law.

The trespass as against Mr. Moore, the owner of the house invaded, was continuous so long as the thief remained upon his premises, his presence there being without the consent of such owner; but the trespasses against the ladies were entirely different things. The offenses against them would have been the same if the thief had been rightfully upon the premises.

This Court, speaking through Judge Turney, in *Morton* v. *The State,* said:

"There are two counts. The *first* is for stealing the property and money of Sam O'Brien, and also for stealing the property and money of Thos.

Corbitt. The *second* is for receiving the property and money of Sam O'Brien, and for receiving the property and money of Thos. Corbitt, knowing them to have been stolen.

"There was conviction, and motion in arrest of judgment. The judgment should have been arrested.

"Each count avers two separate and distinct offenses. Every larceny includes a trespass to the person or property of the owner of the thing stolen. A larceny of the property of O'Brien was no trespass to the person or property of Corbitt, and *vice versa.*" 1 Lea, 498.

The facts of that case are that the defendant, Morton, and O'Brien and Corbitt were all sleeping in the same room one night. The next morning when O'Brien and Corbitt arose, each discovered that his money, pocket-knife, and perhaps some other property had been abstracted from the pockets of his clothes during the night. Morton, as well as this property of O'Brien and of Corbitt, had disappeared from the room during the night. He was supposed to be the thief, and was indicted in the manner and with result stated in the quotation we have made from the opinion in the case.

Though it was not there decided that an acquittal upon a distinct indictment for the larceny of O'Brien's goods would not have been a bar to a prosecution of the same defendant upon an indictment for taking the goods of Corbitt, at the same time and from the same room, *it was* there de-

cided, upon facts very similar to those before us, that *two distinct larcenies* were charged, and that the *trespass* against O'Brien was no *trespass* against Corbitt, and *vice versa.*

There is no other case in Tennessee so nearly applicable in its principles to the case at bar.

Bell's case, 4 Bax., 426, has no application whatever. The question there was whether the taking of certain vegetables was a larceny or a mere trespass—that is, whether the severance and asportation were one continuous act or two separate acts. If the former, then the offense was only a trespass against the owner of the realty; if the latter, it was larceny, under a familiar rule of the common law.

In Fidler's case, 7 Hum., 509, a former conviction for running a horse-race was held to be a bar to an indictment against the same person for "betting" on the same race; but this was expressly and alone upon the ground that the *running of the race* was "a necessary ingredient of the offense" of *betting on the race.*

The same principle was applied in the Wilcox case, 6 Lea, 571. There the defendants had been convicted of robbery from the person of the prosecutor; and that conviction was successfully pleaded in bar of a prosecution for an assault at the same time with intent to commit murder upon the prosecutor. This was right, because the violence used in the commission of the robbery was the same offense, or a necessary ingredient to the other offense charged.

So every battery includes an assault; and a conviction for the assault is a bar to an indictment for the battery, because it cannot be separated from the assault. *The State* v. *Chaffin*, 2 Swan, 494.

But these cases are not in point here. The taking of Mrs. Seawell's goods was no part or ingredient of the taking of her daughter's goods, nor was the one larceny included in the other in any sense.

In *Fowler* v. *The State*, 3 Heis., 154, this Court held that an indictment for an assault upon three persons was good, upon the ground that the offense against each of them might have been committed "by one and the same act."

Citing this case and *Womack* v. *State*, 7 Cold., 508, Judge Cooper says, in *Kennon* v. *State*, 10 Lea, 390, that "an indictment against a defendant for the murder of two persons would be good upon its face, for the murder may be committed in the same degree *by one and the same act.*"

The controlling idea in each of the cases being that the whole offense charged was committed by a *single act* of the accused. In the opinion of Judge Andrews in the Womack case, he says "two acts cannot constitute a single offense of murder." 7 Cold., 513. No more can two acts—the taking of one person's goods in one part of a room, and then of another person's goods in another part of the same room on the same occasion—constitute a single offense of larceny.

In the Williams case, 10 Hum., 101, it was held

that the stealing, at the same time and place, of a horse, saddle, blanket, bridle, and martingal was but a single offense; and likewise, in *Kelly* v. *The State*, 7 Bax., 323, this Court said that the "stealing of a mare and bridle" was only one crime. But the several pieces of property in each of those cases were charged to have belonged to *one person*.

Such are the Tennessee cases supposed to reflect, in some degree, upon the question under consideration; but none of them are decisive of it, unless such be the result of the holding in the Morton case.

Next we notice a few decisions in other States, which are out of harmony with each other, and some of which are in conflict with the views expressed in the first part of this opinion.

In South Carolina the defendant was indicted in three cases for taking the cotton of three persons at the same time. It was held that a conviction in one case was no bar to a conviction in the other two, the Court being of opinion that the larceny of the different parcels of cotton constituted three distinct offenses. *State* v. *Thurston*, 2 McMullen, 382.

The Supreme Court of Massachusetts went still further in *Commonwealth* v. *Andrews*, 2 Mass. R., 409. Andrews had received stolen goods, belonging to A and B, from *the same person, at the same time, and* IN THE SAME PACKAGE. He was convicted upon an indictment for receiving the goods of B, and pleaded that conviction in bar to an

indictment for receiving the goods of A. The plea was adjudged to be insufficient upon the ground that there were two offenses.

In Ohio it was held that the larceny of goods of two different persons at the same time was one transaction, and, therefore, but one offense. *State* v. *Hennessey*, 23 Ohio St., 339, also 13 Am. R., 253.

Wilson was indicted and convicted for stealing a horse. Subsequently he was put upon trial for stealing other property belonging to a different person. Plea of former conviction was sustained, it appearing that the act in each case was the same —the goods charged in the second indictment to have been stolen being upon the horse when he was taken. *Wilson* v. *State*, 45 Tex., 76, also 23 Am. R., 602.

In Section 931 of the ninth edition of his work on Criminal Law, Wharton mentions several instances in which the taking of different things by *one continuous act* has been held to be a *single larceny*; and in doing so he refers to some of the cases cited in notes to the case of *The King* v. *Ellis*, 2 Heard's Leading Criminal Cases. At the conclusion of this section, treating of the singleness of the transaction, the author says: "But if broken up, as is stated, by extrinsic action, then separate indictments are necessary. *This perhaps occurs when articles of different owners are taken by one continuous act.*"

It was proper to charge the ownership of the

property to Miss Roberta Seawell, though a minor, she being eighteen years of age, and owning and using the clothing as her own. 1 Wharton's Cr. L. (9th Ed.), Sec. 947.

The judgment must be affirmed, with costs. Snodgrass, J., dissents.