## ODDO v. UNITED STATES.

## UNITED STATES v. DE NORMAND.

### No. 34, Docket 21044.

United States Court of Appeals
Second Circuit.

Jan. 5, 1949.

Joseph Peter Oddo, pro se, and Kingdon DeNormand, pro se, for appellants.

John F. X. McGohey, U. S. Atty. (William M. Regan and Frederick H. Block, Asst. U. S. Atty., both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

On March 16, 1944, these appellants were convicted with three other defendants on an indictment containing nine counts, eight of which charged violations of 18 U.S.C.A. § 409 [now §§ 659, 2117] and the ninth a violation of the conspiracy statute, 18 U.S.C.A. § 88 [now § 371]. Oddo received a total sentence of 15 years, and DeNormand a total sentence of 17 years. Their convictions were affirmed on May 14, 1945. United States v. DeNormand et al., 2 Cir., 149 F.2d 622.[1] On November 30, 1947 Oddo moved under Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. to vacate as il-

---

[1] Certiorari denied 326 U.S. 756, 66 S. Ct. 89, 90 L.Ed. 454, rehearing denied 326 U.S. 808, 66 S.Ct. 165, 90 L.Ed. 493, rehearing denied 326 U.S. 811, 66 S.Ct. 331, 90 L.Ed. 495, rehearing denied 327 U.S. 816, 66 S.Ct. 676, 90 L.Ed. 1039, certiorari denied 330 U.S. 822, 67 S.Ct. 769, 91 L.Ed. 1272, rehearing denied 330 U.S. 854, 67 S.Ct. 860, 91 L.Ed. 1296.

legal so much of the sentence as rests on counts 3 to 8 of the indictment. The motion was denied on March 15, 1948. Oddo's present appeal is from that order.

Before passing on the merits of the appeal we must consider the appellee's contention that appellate jurisdiction is lacking because the appeal was taken too late. Rule 37(a) (1) of the Federal Rules of Criminal Procedure provides that an appeal "is taken by filing with the clerk of the district court a notice of appeal in duplicate"; and subdivision (a) (2) of Rule 37 requires an appeal to be taken within 10 days after entry of the judgment or order appealed from. Oddo's notice of appeal was not received by the clerk of the district court until March 29, 1948 and was not formally filed by the clerk until April 7th because the $5 filing fee did not arrive until that date.[2] Either date was more than 10 days after entry of the order of March 15th. However, Rule 49(c) provides that "Immediately upon the entry of an order * · * * the clerk shall mail to each party affected thereby a notice thereof and shall make a note in the docket of the mailing." By letter dated March 18th the clerk notified Oddo of the order denying his motion. This was not received by him in the Penitentiary at Alcatraz, California, until March 22nd or 23rd and on the latter date Oddo wrote a letter to the clerk enclosing the notice of appeal and stating that the filing fee was being forwarded through official prison channels.[3] It would seem pointless to require notification by the clerk of the court unless the party for whose benefit the provision exists is entitled to rely on receipt of the notice. We believe that, under the circumstances of the appellant's imprisonment, the ten day period mentioned in Rule 37(a) (2) did not start to run until receipt of the notice required by Rule 49(c). Such appears to be the view of the Sixth Circuit in Remine v. United States, 161 F.2d 1020, certiorari denied 331 U.S. 862, 67 S.Ct. 1759, 91 L.Ed. 1868. Additional support for this view may be found in the court's discussion in Hill v. Hawes, 320 U.S. 520, 523, 64 S.Ct. 334, 88 L.Ed. 283, 149 A.L.R. 736, of Rule 77(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which is substantially the counterpart of Rule 49(c) of the Rules of Criminal Procedure. See also Boykin v. Huff, 73 App. D.C. 378, 121 F.2d 865, 873, where a letter addressed to the trial judge was held a sufficient compliance with Rule 37(a).

The fact that the notice of appeal was unaccompanied by the filing fee does not in our opinion impair its validity. It is true that we do not find in the Criminal Rules the equivalent of Civil Rule 73 (a) which provides that the failure of the appellant to take further steps after filing notice of appeal does not affect the validity of the appeal; it is likewise true that Smith v. Johnston, 9 Cir., 109 F.2d 152, 154 contains a dictum that the clerk of the district court is justified in refusing to file the notice of appeal until his fee has been paid or an order made permitting the appellant to proceed in forma pauperis.[4] But however that may be in a civil appeal, when an indigent appellant is incarcerated and is required to comply with the prison routine in transmitting the filing fee, we think it would be most unreasonable to say that his appeal has not been timely filed within Rule 37(a) merely because of delay caused by prison routine in the clerk's receipt of the fee. See Boykin v. Huff, supra, 121 F.2d at page 873. To so hold would give his jailer power to prevent an appeal. We conclude, therefore, that the appeal was taken in season, and we pass to·a consideration of the merits of the appeal.

The total 15 year sentence imposed on Oddo was made up as follows: 10 years on counts 1 and 2 to run concurrently; 5 years on counts 3 to 8 to run concurrently but to be served consecutively to the sentence on counts 1 and 2; and one year and one day on count 9 to run concurrently with the sentence on counts 3 and 8. The appellant's motion to vacate as illegal that

---

[2] See 28 U.S.C.A. §§ 548, 552 [now §§ 1914, 1917]. The filing fee was sent by the prison warden by means of a transmittal slip dated March 25, 1948.

[3] The letter was dated March 23, 1945; its envelope was postmarked March 25th and marked received March 29th.

[4] Oddo obtained an order on April 26, 1948 permitting him to prosecute his appeal in forma pauperis.

part of the sentence based upon counts 3 to 8 rests on the theory that it amounts to a second punishment for the same offense charged and proved under count 1. Count 1 charged the theft from "certain trailer trucks" of an interstate shipment of freight from Park & Tilford Import Corporation's place of business in New York to itself in New Haven, Connecticut, consisting of 1005 cases of whiskey. At the trial it was proved that 590 of such cases were in one truck referred to as truck 3, and 415 in another truck referred to as truck 4. Each of counts 3 to 8 charged the theft from "a certain trailer truck" of an interstate shipment of freight from a named consignor to a named consignee, consisting in count 3 of 200 cases of Vermouth, in count 4 of 100 cases of Sherry and Muscatel Wine, in counts 5, 6 and 7 of cases of tomato puree, and in count 8 of cases of Marsalla Tonic. The proof showed that all of the merchandise mentioned in counts 3 to 8, as well as 415 cases of Park & Tilford whiskey mentioned in count 1 was in truck 4.[5] The appellant and his co-defendants "hijacked" the two trucks on the night of November 30, 1943 in the manner described in our former opinion. Before any of its contents was removed from either truck, the conspirators were apprehended.

The appellant now argues that the seizure of truck 3 and its contents was a single crime, and similarly the seizure of truck 4 and its contents, and since count 1 covered some of the goods in each truck, the ten year sentence imposed under count 1 was in part for the theft of the contents of truck 4, and the imposition of the additional five years under counts 3 to 8 was a second sentence for the same offense. In substance the contention is that a thief who steals a vehicle and its contents commits but one theft, even though the vehicle contains packages of different kinds of goods belonging to different owners. The appellant places great reliance on the case of Robinson v. United States, 10 Cir., 143 F.2d 276, at page 277, where the court said:

"Merely because one element of a single criminal act embraces two persons or things, a prosecutor may not carve out two offenses by charging the several elements of the single offense in different counts and designating only one of the persons or things in one count and designating only the other person or thing in the other count."

■ That case held that it was a single crime to transport in interstate commerce several prostitutes in the same vehicle at one time. Kerr v. Squier, 9 Cir., 151 F.2d 308 is in accord, but Crespo v. United States, 1 Cir., 151 F.2d 44, certiorari dismissed 327 U.S. 758, 66 S.Ct. 520, 90 L.Ed. 991, expressly rejected the doctrine of the Robinson case. Whatever the correct rule may be as to violations of the Mann Act, we think that under the National Stolen Property Act, 18 U.S.C.A. § 409 [now §§ 659, 2117], the taking of cases of merchandise belonging to different owners and constituting independent interstate shipments, though contained in one vehicle, may be regarded as separate offenses for which separate punishment can be imposed. The intention of Congress, we believe, in enacting § 409 was to protect each and every "interstate shipment" of goods against felonious taking. We said substantially this in considering the somewhat similar contention asserted in the former appeal that the taking of both trucks constituted only a single crime. United States v. DeNormand, 2 Cir., 149 F.2d 622, at page 625.

The question whether the stealing of the goods of different owners at one time and place constitutes several offenses or only one has been much mooted in the courts and has produced divergent answers. In United States v. Beerman, 24 Fed.Cas. 1065, No. 14,560, Chief Judge Cranch, with whom Circuit Judge Morsell concurred, reviewed at length the early English cases

---

[5] In the opinion affirming the convictions, United States v. DeNormand, 2 Cir., 149 F.2d 622, at page 625, we erroneously stated, relying on statements in counsel's brief, that truck 3 contained the merchandise involved in counts 1 and 2, and truck 4 contained the merchandise involved in counts 3 to 8.

and held that multiple offenses were committed, while Circuit Judge Thurston filed a vehement dissent.[6] It is seldom that by a single act a thief can take possession of the property of two persons; usually the thefts are accomplished by successive acts, as where two persons in the same room are held up at the point of a pistol and money taken first from one and then from the other. Such a case presents no logical difficulty in finding separate crimes, for separate acts are committed each with a criminal intent.[7] When the goods of different ownership are in one container, as stock certificates in a single envelope or separate interstate shipments in one vehicle, by his act of seizing the envelope or vehicle the thief takes possession of its contents whosoever may own them. This was the character of the taking of the goods in truck 4 in the case at bar. A somewhat analogous case is Commonwealth v. Sullivan, 104 Mass. 552. There the indictment was in two counts, one charging the stealing of goods of Longstreet, the other the stealing of goods of Ford. Each owner had ordered the goods from a different manufacturer to be sent to him through the American Union Express Company. It appeared that the defendant took both packages from the express wagon "at the same time and by one act and one taking," although the goods were in different places in the wagon. The defendant asked the trial judge to rule that the Commonwealth must elect between the counts, but the request was denied and the jury returned a verdict of guilty on both counts. It does not appear whether cumulative sentences were imposed. On appeal the conviction was affirmed, Judge Gray saying 104 Mass. at page 553:

"The stealing at the same time and by one taking of several articles belonging to different persons is larceny of the whole and of each article; and may be indicted in either one aspect or the other—as one entire crime, or as several distinct offenses.

If indictments or counts for one taking of several articles are unreasonably multiplied, the court, in superintending the course of trial and in passing sentence, will see that justice is done and oppression prevented."

On the other hand, in Henry v. United States, 49 App.D.C. 207, 263 F. 459, at page 463, certiorari denied 257 U.S. 640, 42 S.Ct. 51, 66 L.Ed. 411, it was held that where the defendant embezzled several stock certificates by a single act, only one offense was committed, although the stock was owned by two persons, and the court said that this principle is sustained by the overwhelming weight of authority. No controlling decision in the Supreme Court or in our own circuit has come to our attention. In Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151, it was held that cutting into each of several mail sacks in a railway postal car constituted separate crimes for which the defendant could be separately punished. That case, however, may be distinguished because the stroke which cut each mail sack was a separate act.

The test of the identity of offenses, when double jeopardy is set up, is whether the evidence sustaining one indictment or count would have proved the other indictment or count. Morgan v. Devine, 237 U. S. 632, 641, 35 S.Ct. 712, 59 L.Ed. 1153; United States v. Busch, 2 Cir., 64 F.2d 27, 28; Carpenter v. Hudspeth, 10 Cir., 112 F.2d 126, 127. Proof that the appellant feloniously took possession of the 415 cases of whiskey belonging to Park & Tilford Import Corporation in truck No. 4 and involved in count 1 would not have proved that he feloniously took possession of the different merchandise of different ownership specified in counts 3 to 8. In United States v. Beerman, 24 Fed.Cas. 1065, at page 1070, No. 14,560, it was said:

"So if the man who stole the several goods of A and of B, should be indicted for

---

[6] The Beerman case was disapproved in Hoiles v. United States, 3 MacArthur 370, 36 Am.Rep. 106, and the latter was followed in Chanock v. United States, 50 App.D.C. 54, 267 F. 612, 11 A.L.R. 799.

[7] Even in such a case the authorities are divided. See annotations in 31 L.R.

A.,N.S., 693 at page 723, and 42 L.R.A., N.S., 967. Frequently the precise issue presented is not double jeopardy but whether an indictment or count is demurrable when it alleges that the separate property of two persons was taken at the same time and place.

stealing the goods of A, and should be acquitted, he could not plead his acquittal in bar of an indictment for stealing the goods of B, although stolen at the same time; because the evidence of stealing the goods of B, would not support the indictment for stealing the goods of A."

Other decisions to the same effect are Phillips v. State, 85 Tenn. 551, 3 S.W. 434; State v. Bynum, 117 N.C. 752, 23 S.E. 219; State v. Thurston, 2 McNul., S.C., 382; In re Allison, 13 Colo. 525, 22 P. 820, 10 L.R.A. 790, 16 Am.St.Rep. 224. Probably at least as many cases can be found which take the opposite view. See State v. Sampson, 157 Iowa 257, 138 N.W. 473, 42 L.R.A.,N.S., 967, and the annotations cited in note 7, supra. We have discovered no controlling authority involving a situation such as the case at bar presents. As already stated we believe that the statute was intended to protect each and every interstate shipment contained in truck No. 4 and we adhere to the view that counts 3 to 8 charged offenses separate from the crime charged in count 1. Consequently the imposition of cumulative sentences was not illegal, and the denial of the appellant Oddo's motion was correct.

DeNormand has appealed from an order of March 9, 1948 denying what he styled "a supplemental motion to a motion for a new trial." [8] A notice of appeal from this order was enclosed in a letter to the clerk of the district court dated March 13, 1948. This letter was evidently received by the clerk on March 18th, as on that date the clerk wrote DeNormand with regard to the lack of a filing fee. Such fee was received by the clerk on April 7, 1948, and the notice of appeal was then placed on file. For reasons already given in the Oddo appeal, the delay in receipt of the filing fee should not vitiate an appeal otherwise timely.

The appellee suggests that DeNormand's "supplemental motion to a motion for a new trial" was in reality a motion to reargue the motion for a new trial denied by Judge Brennan in September 1947 and from which no appeal had been taken. Without passing on the validity of this suggestion, we shall in misericordiam treat the "supplemental" motion as an original motion for a new trial. As such it was properly denied because brought too late. Rule 33 of the Rules of Criminal Procedure requires a motion for a new trial based on newly discovered evidence to be made within two years after final judgment. This period had clearly run out whether the date of "final judgment" be deemed to be the date sentence was imposed, March 16, 1944, or the date of entry of this court's mandate of affirmance, June 2, 1945. Although the first sentence of Rule 33 declaring that a new trial may be granted to a defendant in the interests of justice contains no time restriction it seems clear that the opening sentence was meant to be limited, in the case of newly discovered evidence, by the two year period and, in other cases, by the five day period, as expressly stated in later sentences of the Rule. See United States v. Smith, 331 U.S. 469, 473 note 2, 67 S.Ct. 1330, 91 L.Ed. 1610.

Both orders on appeal are affirmed.

---

[8] The appellee's brief states that motions previously made by DeNormand for a new trial were denied in June 1944, June 1945, May 1946, July 1946, and September 1947.